**JOHNSON, Plaintiff-Appellant, v. COMMERCE MOTORS, INC. et, Defendants-Appellees and JOHNSON, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 24291, 24292. Decided June 19, 1958.

George Braun, for plaintiff-appellant, Willie Johnson and defendant-appellant, Mattie Johnson.

Marshman, Hollington & Steadman, for defendants-appellees, Commerce Motors, Inc., and Northeast Investment Company, Inc.

W. J. Papenbrock, for defendant-appellee, The National City Bank of Cleveland.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law and fact from a decree and judgment entered for .the defendants, Commerce Motors, Inc., Northeast Investment Company, Inc., and The National City Bank of Cleveland. on plaintiff's amended petition. Judgment was entered against the plaintiff and the defendant Mattie Johnson on the cross-petition of The National City Bank of Cleveland.

The plaintiff purchased a Ford convertible Sunliner automobile by contract between himself and defendant, Commerce Motors, Inc. The contract was entered into on or about September 28, 1955. The automobile involved was the property of Milan Mihelich, a salesman for the Commerce Motors, Inc. He had purchased it from Commerce Motors, Inc. for use as a demonstrator. The sale here considered was made for Mihelich's benefit, the salesman making the sale receiving no commission and Commerce Motors, Inc. no financial reward.

The plaintiff by his second amended petition filed in this court, upon leave, alleges the purchase of a new 1955 Ford Sunliner, eight cylinder, convertible automobile. The petition sets out the alleged terms of the sale. These allegations are not in complete accord with plaintiff's evidence. It is further alleged that the defendant, Commerce Motors, Inc., "stated, guaranteed, warranted and represented" that the Ford being sold was a new automobile when, in truth and fact, it was a used automobile owned by one of its salesmen. In the transaction, it is alleged that this appellant transferred to the Commerce Motors, Inc., a 1952 Ford convertible which said appellee resold on October 4, 1955. The plaintiff then alleges that after he received delivery of the said convertible, he discovered it was, in fact, a "used" automobile and that he thereupon demanded the delivery of a new 1955 Ford convertible or the return of the automobile he had transferred to the Commerce Motors, Inc. and a cancellation of the contract. It is alleged that on October 17, 1955, the defendant, Commerce Motors, Inc., took title to the automobile sold plaintiff from its salesman and caused such certificate of title to be transferred to this appellant but did not furnish him a memorandum of title.

The plaintiff alleges that he notified the appellee, The National City Bank of Cleveland of the full nature of the transaction, that he had made a tender or offer to return the 1955 Ford convertible and that the defendants have refused such tender and further that he thereupon placed it in storage and has not since that date driven or used it but is holding it for the defendants.

It is alleged that the defendants have refused to furnish plaintiff with a retail buyer's order, and to transfer to him title to said auto-

mobile within three days of the sale or to deliver to plaintiff a certificate of title, a copy of the mortgage, as is required by law. It is also alleged that the defendants, Commerce Motors, Inc. and Northeast Investment Co., Inc., performed all of the acts complained of, knowingly, maliciously and wilfully, with purpose, intent and design to defraud, injure and otherwise damage the plaintiff and that The National City Bank of Cleveland purchased the plaintiff's note and mortgage with full knowledge of the alleged fraudulent conduct of the other defendants and, is, therefore, not a holder in due course.

The prayer of plaintiff's petition seeks to cancel and rescind the contract for the purchase of the 1955 Ford convertible, the return of his 1952 Ford or its value in money, the cancellation of the mortgage and note now in the possession of The National City Bank of Cleveland, and to assess punitive damages and reasonable attorney fees and other equitable relief.

The separate answers of the defendants Commerce Motors, Inc., Northeast Investment Co. and The National City Bank of Cleveland, to the second amended petition of the plaintiff, admit the sale of the 1955 Sunliner Ford convertible to the plaintiff but allege it was sold as a demonstrator belonging to one of the salesmen of Commerce Motors. These defendants then set forth their claim as to the financial agreement between the buyer and seller resulting in a balance due of $2640 to be paid in thirty monthly installments of $88.00 secured by mortgage.

The National City Bank of Cleveland filed a cross-petition seeking judgment on the note given by the plaintiff and the new defendant, Mattie Johnson, representing the balance due for the purchase of said Ford less a credit of $210.67 for unearned finance charges with interest on the balance due of 8% from February 15, 1956. All claims of fraud or misrepresentation are specifically denied by these defendants.

The plaintiff and new defendant, Mattie Johnson, wife of the plaintiff, put in issue by answer the allegations of the cross-petition of The National City Bank of Cleveland.

The issues of fact on the claim that fraud was perpetrated upon plaintiff in delivering a used automobile to him, in place of the new automobile which he claimed to have purchased, must be decided in favor of the defendants. In the first place, the retail buyer's order, admittedly signed by Willie Johnson, which is dated September 20, 1955, a photostatic copy of which he attached to his second amended petition, shows on its face that the subject of the sale was a used automobile. It is so marked in the space provided for that information. The transcript likewise shows that plaintiff called as his witness the defendant Commerce Motors, Inc.'s salesman, who made the sale, the former owner of the automobile, who was also a salesman for "Commerce," its sales manager, all as his witnesses. He is, therefore, bound by their testimony. These witnesses give no support whatsoever to plaintiff's claims and establish beyond peradventure of doubt that the plaintiff did, with full knowledge of the fact, purchase a demonstrator which had been driven nearly five thousand miles. The plaintiff also introduced a witness who testified as an expert that the tires on the automobile delivered

to plaintiff were used tires, the tread of one of them being worn down fifty percent, two others, twenty-five percent, and the fourth worn down ten percent. Also the plaintiff made the statement that the spare was a used tire. There was also testimony that the wear on the brake peddle was very noticeable. He also said that the plaintiff drove the car to his place of business about three months before trial and again on the day of trial. He also testified that the speedometer showed that the automobile had been driven more than 4,000 miles. The used tires and worn brake peddle and the speedometer reading were certainly clearly in the view of the plaintiff when he drove the automobile home from the sales agency and it is hard to imagine that the plaintiff failed to see or have knowledge of such clear evidence that the automobile was not new. These physical facts support completely the testimony the witness above referred to, namely, the fact that the plaintiff purchased a "demonstrator."

There are other factors presented by the transcript to be considered in determining the right of the plaintiff to cancel or repudiate the contract. A purchaser cannot use the property purchased after he discovers defects upon which he claimed the right to rescind and still seek rescission. The plaintiff drove the automobile one hundred miles by his own testimony after he had full knowledge of the facts upon which he claimed the right to rescind. On one of his trips, he was involved in an accident by reason of his own negligence when he ran into a parked automobile. These circumstances mitigate against his claim of the right to cancel the purchase of the automobile.

The claims of the plaintiff that Commerce Motors, Inc. failed to comply with §§4505.06, 4505.18-B and 1317.02 R. C., are not relevant as a defense, at least on the facts in this case, where the action is not brought until there has been full compliance. The second section mentioned relates to the obligation of one holding an automobile for sale to obtain a certificate of title thereto. The first section mentioned deals with the obligation of a person selling a motor vehicle to file the application for a certificate of title for the purchase within three days of delivery of such vehicle. From the transcript, it is clear that Commerce Motors, Inc. did get a certificate from its salesman and on October 17, 1955, title was transferred by certificate as provided by law to the plaintiff and the certificate made available to him. There is no evidence when the certificate of title for the 1955 Ford convertible was received by Commerce Motors, Inc. or as to when application was filed for the transfer of the certificate of title to the plaintiff. No violation of these statutes has been shown. But even if there were some support for plaintiff's allegations that the statutes were not followed, there could be no claim that the sale here being considered would be void under the facts of this case. The statutes provide a penalty for their violation but there is no provision which would affect the validity of the contract of sale where before the action was brought, the automobile was in the possession of the buyer and the statutes complied with.

The claim that the written order for the purchase of the Ford automobile was not given to the plaintiff, upon delivery, as required by

§1317.02 R. C., is unquestionably a correct statement of fact. Although there was a completed "Retail Buyer Order" signed by the plaintiff, there is no evidence that a copy was delivered as required. There is also some claim that the order was changed after plaintiff signed it. This fact is supported by the evidence. But the record also shows that the change in the figures was made shortly after plaintiff signed the order and that he consented to such changes. The record on this question is as follows:

"Q. Which figures did you change after you saw Stallings?

"A. The used car allowance from 1627. to 1597.76. That left the other balance of $580 alone. I changed this to 2110 and left this the same, and changed the figures down here where it says 'monthly payments of $86.68' to $88.00.

"Q. So there is $30 difference, is that right? The first one is $1,627 and the other one is $1,597, so you just added on $30 to the balance of the account?

"A. That's correct.

"Q. Which gave a smaller trade-in allowance. Did you tell Johnson about this?

"A. Yes, absolutely.

"Q. And he didn't sign the contract after you told him that, did he? He signed the contract before this change was made in the trade-in allowance?

"A. That's right. But he knew about it. I come back out and talked to him.

"Q. Now, this is your handwriting?

"A. That's correct."

In all events no claim is pleaded by the plaintiff that he was charged more than he agreed to pay. The claim here was that the contract is void for failure to deliver a copy of the order of purchase. Such claims cannot be supported. The failure to deliver such writing may be the subject of a penalty but not a cancellation of the purchase. There is only one provision under the Retail Installment Sales Act where it is provided a violation thereof will void the contract. That is §1317.08 R. C., dealing with overcharges and even under this section the procedure therein must be followed to permit rescission.

For the foregoing reasons, the plaintiff's petition is dismissed and a judgment decree is entered for the defendants, the Commerce Motors, Inc., the Northeast Investment Co., Inc., and The National City Bank of Cleveland. Judgment is also entered for The National City Bank of Cleveland on its cross-petition against the plaintiff and the defendant Mattie Johnson in the sum of $2429.33, together with interest at 8% from February 15, 1956, and the costs of this action for which judgment is rendered.

Exceptions noted.

HURD and KOVACHY, JJ, concur.