GLOUSTER COMMUNITY BANK, Appellee and Cross–Appellant,

v.

WINCHELL, Appellant and Cross–Appellee.

[Cite as *Glouster Community Bank v. Winchell* (1995), 103 Ohio App.3d 256.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 94CA1630.

Decided May 4, 1995.

*Vorys, Sater, Seymour & Pease* and *Randall D. LaTour,* for appellee and cross-appellant.

*Southeastern Ohio Legal Services* and *John Pembroke,* for appellant and cross-appellee.

HARSHA, Judge.

This is an appeal and cross-appeal from the Athens County Court of Common Pleas involving the application of Ohio's Retail Installment Sales Act ("RISA"),

R.C. 1317.01 *et seq.*, to the sale of a mobile home to appellant, Shirley Winchell. The facts are not in dispute.

On March 25, 1987, Thomas and Shirley Winchell purchased a used 1986 mobile home from appellee and cross-appellant, Glouster Community Bank ("Glouster"). It is undisputed that appellee is a financial institution as defined by R.C. 5725.01(A). Glouster was the owner of the Skyline mobile home prior to its sale to Thomas and Shirley Winchell as a result of having previously repossessed it from a defaulting debtor. Appellee consummated the sale to the Winchells through its agent Ronald Dupler, who is the sole proprietor of Nelsonville Mobile Home Sales.

Mr. and Mrs. Winchell financed the purchase of the mobile home through Glouster Community Bank by signing an agreement titled "Mobile Home Retail Installment Contract and Security Agreement." This agreement required the Winchells to pay $230.49 a month for one hundred eighty consecutive months until the mobile home was paid for in full. However, the agreement also demanded that the Winchells pay court costs and attorney fees in the event that they defaulted on the loan. Thomas and Shirley Winchell, who are still in possession of the mobile home, have failed to make any payments since July 25, 1990.

Appellee filed its complaint against Thomas and Shirley Winchell on December 7, 1990, for failing to make the loan payments.[1] On September 19, 1991, Glouster moved for summary judgment. Shirley Winchell filed a cross-motion for summary judgment on October 21, 1991, claiming that the loan agreement violated RISA and was therefore unenforceable against her. On July 11, 1994, the trial court entered its decision finding that Ohio's Retail Installment Sales Act applied to the loan. The court then ruled that Mrs. Winchell could rescind the contract and return the mobile home to appellee, or keep the mobile home and make the financial payments she was obligated to under the contract. Both parties have appealed this decision.

Shirley Winchell, who perfected her appeal first, alleges the following assignment of error:

"The trial court erred in denying defendant-appellant the remedy to which she was entitled pursuant to Ohio Revised Code Section 1317.08."

Cross-appellant, Glouster Community Bank, assigns the following errors:

"I. The trial court committed prejudicial error by finding that the Retail Installment Sales Act, Revised Code Section 1317.01 *et seq.*, was applicable to the

---

1. Thomas Winchell died on January 14, 1991, and was dismissed as a defendant on May 17, 1994.

transaction between plaintiff, Glouster Community Bank, and defendant, Shirley Winchell.

"II. The trial court committed prejudicial error by finding that the mere inclusion of an attorney's fee provision in the loan documents constituted a 'forbidden charge,' pursuant to Revised Code Section 1317.01 *et seq.*

"III. The trial court committed prejudicial error by abusing its discretion in reaching legal conclusions that were manifestly contrary to the only evidence in the record.

"IV. The trial court committed prejudicial error by failing to grant judgment on the debt in favor of plaintiff, Glouster Community Bank, and against defendant, Shirley Winchell."

We must initially decide whether RISA applies to the transaction between Glouster and Shirley Winchell. Glouster essentially argues in its first assignment of error that it is exempt from the provisions of RISA because it is a financial institution as defined in R.C. 5725.01(A).

■ It is undisputed that the provisions of RISA apply only to retail installment contracts which are executed in connection with a retail installment sale. See *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138, 143, 623 N.E.2d 177, 181, fn. 3. A retail installment sale is defined in R.C. 1317.01(A) as follows:

" 'Retail installment sale' includes every retail installment contract to sell specific goods, every consumer transaction in which the cash price may be paid in installments over a period of time, and every retail sale of specific goods to any person in which the cash price may be paid in installments over a period of time. * * *"

Thus, if a transaction meets any of the three definitions of R.C. 1317.01(A), the provision of RISA will apply.

■ RISA, however, specifically exempts financial institutions such as Glouster from the definition of consumer transactions within the meaning of the Act. As a result, banks that merely lend money to consumers for the purpose of purchasing items are usually not subject to the regulations of RISA because they have not entered into a consumer transaction within the meaning of the Act, nor have they entered into an agreement to sell specific goods. See *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 100, 519 N.E.2d 363, 367, fn. 3; *Vannoy, supra; Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 571 N.E.2d 442; *Huntington Bank v. Freeman* (1989), 53 Ohio App.3d 127, 560 N.E.2d 251.

■ However, in this case, Glouster was the title owner to the mobile home at the time of the sale to Shirley Winchell. Thus, Glouster was not merely lending

money to Winchell for the purpose of purchasing the mobile home, but instead actually engaged in a contract to sell the mobile home directly to Winchell. As a result, by the plain language of R.C. 1317.01(A), the transaction between Glouster and Winchell falls within the purview of RISA.

Glouster, however, denies that the provisions of RISA are applicable to this transaction despite the fact that it was the title owner to the mobile home at the time of the sale. It contends that the provisions of RISA should not apply to it because it is merely the title owner of the mobile home by virtue of a repossession, and is not in the business of selling mobile homes. We disagree.

R.C. 1317.01(I) defines a "retail seller" as "a seller who is a party to a retail installment sale." "Seller" is defined in RISA as "a person who sells or agrees to sell goods." R.C. 1317.01(H). Thus, the Act expressly applies to any person who sells or agrees to sell goods, and not merely to persons who are in "the business of selling goods." Cf. R.C. 1345.01(C) (defining "supplier" as a person "engaged in the business" for purposes of Ohio's Consumer Sales Practices Act). As a result, we agree with the trial court that the terms of RISA apply to the contract between Glouster and Shirley Winchell and, therefore, overrule Glouster's first cross-assignment of error.

Having decided that RISA applies to the transaction between Glouster and Winchell, we will now determine whether the retail installment contract did in fact violate those provisions. Glouster's second cross-assignment of error argues that the provision for attorney fees in the contract does not violate RISA. We disagree.

R.C. 1317.01 *et seq.* specifically sets forth the financial rates and charges that can be contracted for under RISA. Those charges that are allowed in a retail sales installment contract are (1) the principal, insurance premiums, and interest charges as described in R.C. 1317.04; (2) delinquent charges as set forth in R.C. 1317.06; (3) taxes and fees for filing, recording, or releasing any instrument; and (4) a documentary service charge, limited to $15 per sale. See *Sonn v. Taylor* (Sept. 28, 1993), Athens App. No. 1527, unreported, 1993 WL 382248.

R.C. 1317.07 states in pertinent part:

"No retail seller, directly or indirectly, shall charge, *contract for*, or receive from any retail buyer, any further or other amount for examination, service, brokerage, commission, expense, fee, or other thing of value." (Emphasis added.)

Thus, because RISA does not allow for a retail seller to contract for a recovery of attorney fees in the case of default, and because all other charges are specifically prohibited by the statute, it is well settled that the inclusion of attorney fees in a retail installment sales contract violates RISA. See *Kreitzer v.*

*Thrifty Foods Corp.* (Aug. 8, 1985), Montgomery App. No. CA8970, unreported, 1985 WL 8776. As a result, we overrule Glouster's second cross-assignment of error.

Glouster's third and fourth cross-assignments of error, as well as Winchell's sole assignment of error, all involve the nature and extent of the remedy to which Winchell is entitled. Winchell argues that Glouster should be without recourse because the contract and the security agreement are unenforceable under RISA. In essence, Winchell argues that Glouster must forfeit the mobile home. Glouster contends that the security agreement and the contract should not be found unenforceable because it did not willfully violate RISA. Glouster also argues that even if it is found to have willfully violated RISA, the law does not require a forfeiture.

R.C. 1317.08 provides:

"No retail installment contract which evidences an indebtedness greater than that allowed by Section 1317.06 or 1317.07 of the Revised Code and *no retail installment contract in connection with which any charge prohibited by* Sections 1317.01 to 1317.11, inclusive, of the Revised Code, *has been contracted for or received shall be enforceable against any retail buyer,* or any other person * * * *and no security interest* created by any such retail installment contract which is greater than that allowed by Sections 1317.06 and 1317.07 of the Revised Code or *in connection with which any charge is prohibited* by Sections 1317.01 to 1317.11, inclusive, of the Revised Code, *has been contracted for or received shall be enforceable against any retail buyer * * *. In order for a retail buyer to avail himself of this section,* he must prove that the retail seller or the holder of the retail installment contract has been notified in writing of the overcharge and has failed within ten days of such notification to advise the retail buyer of a full credit, or *he must prove that the overcharge has been willful."* (Emphasis added.)

As noted previously, Glouster argues that there is no evidence that it willfully violated RISA by merely including a provision for attorney fees in the retail installment contract.

 However, it is well settled that the inclusion of the illegal charge in a preprinted contract form constitutes a willing violation of RISA. *Sonn, supra* (stating "the buyer need not show that the seller knew the act violated the law; the buyer need only show the seller 'intended to impose a charge which violates the act.' "); *Kreitzer, supra.* Further, it is not necessary that the seller actually recover the attorney fees under the contract. By the express terms of R.C. 1317.08, a violation occurs if a provision for attorney fees is merely included in the

retail installment contract. Consequently, we find that Glouster did willfully violate RISA.

We must now determine if Glouster's violation of RISA requires a forfeiture of the mobile home. Before deciding this issue, we note the nature of our review. RISA and the Ohio Consumer Sales Practices Act were passed by the legislature to provide broad protection for consumers and to punish sellers who violate the Acts. See *Sonn, supra.* In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322–1323. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461–462; *S.R., supra,* 63 Ohio St.3d at 595, 589 N.E.2d at 1323. In interpreting a statute, words and phrases shall be read in context and construed according to the rules of grammar and common usage. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817; R.C. 1.42. Courts do not have authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. *Wray v. Wymer* (1991), 77 Ohio App.3d 122, 131–132, 601 N.E.2d 503, 509. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80–81.

R.C. 1317.08 explicitly states that neither the retail installment contract nor the security interest created by the retail installment contract are enforceable against the buyer if the seller has violated RISA. Thus, according to the plain language of the statute, the seller may neither sue for the money owed in the contract nor retain right to repossess the goods. See R.C. 1309.46 (a *secured party* has the right upon default to take possession of the collateral). In short, "the buyer is left with the goods and the seller is left with an unenforceable evidence of indebtedness." See *Allied Invest. Credit Corp. v. Wagon Master, Inc.* (Mar. 8, 1976), Lake App. No. 5–230, unreported; see, also, *Kreitzer, supra; Domestic Credit Corp. v. Vazquez* (Jan. 29, 1981), Cuyahoga App. No. 41985, unreported.

Glouster also argues that application of RISA in this case violates the Supremacy Clause of the United States Constitution because federal bankruptcy law requires it to include in the contract a provision for attorney fees in case the debtor files for bankruptcy. However, a violation of the Supremacy Clause will be found only in those situations in which compliance with the federal law and the state law is a physical impossibility, or when state law stands as an obstacle to the full purposes and objections of Congress. See *Fid. Fed. S. & L. Assn. v. de*

*la Cuesta* (1982), 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664. In this case, Glouster could easily have complied with both laws by simply stating that attorney fees would only be recovered if the debtor actually filed for bankruptcy. Therefore, we reject this argument.

Finally, Glouster argues that it should be entitled to recover either the fair value of the mobile home or the mobile home itself under the equitable theory of *quantum meruit.* It contends that appellant Winchell will be unjustly enriched if she is allowed to keep the mobile home without making payments. While we agree that appellant Winchell will receive a windfall as a result of our decision, we do not believe that we can apply the equitable theory of *quantum meruit* where the bank has failed to ask for such relief in its complaint. Consequently, although we recognize the draconian nature of this result, we are bound by the will of the legislature as expressed in the language of the statute. In short, we adhere to the maxim "the best way to get rid of bad law is to rigidly enforce it." *Washegesic v. Bloomingdale Pub. Schools* (C.A.6, 1994), 33 F.3d 679, 684 (Guy, J., concurring).

Accordingly, we overrule Glouster's third and fourth cross-assignments of error and sustain appellant Winchell's sole assignment of error.

*Judgment affirmed in part
and reversed in part.*

GREY, J., concurs.

STEPHENSON, J., dissents.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.

STEPHENSON, Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the trial court. See *Sonn v. Taylor* (Sept. 28, 1993), Athens App. No. 1527, unreported, 1993 WL 382248; *Natl. Fin. Co. v. Weatherly* (Nov. 26, 1976), Lucas App. No. L–76–084, unreported; and *Johnson v. Commerce Motors, Inc.* (1958), 106 Ohio App. 376, 7 O.O.2d 108, 151 N.E.2d 656.