JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Lynn Howard appeals the small claims court's bench trial ruling on plaintiff-appellee Charles Ferrari's complaint and her counterclaim.
{¶ 2} Appellant Howard ("customer") bought a used 1985 Plymouth Voyager from Ferrari ("merchant") on October 31, 1997. The total purchase price was $1,221.25 and was financed with a $550.00 down payment. Customer signed a security agreement for the remaining $671.25 owed.
{¶ 3} The used vehicle order stated that the contract was to be paid in three payments of $200.00 each, with the first payment due on November 30, 1997. The order form failed to account for the additional $71.25 owed on the contract. The used vehicle order filled out by the merchant listed the following:
{¶ 4} car sales price: $1,100.00
{¶ 5} tax 77.00
{¶ 6} filing fees 40.00
{¶ 7} license plates 4.25
{¶ 8} Total $1,221.25
{¶ 9} Neither the used vehicle order nor the security agreement contained any entry listed as a "finance charge." The actual cost of the filing fees was $21.00. At trial, merchant testified that he considered the remaining $19.00 as a "documentary service charge." Customer alleges, however, that it is a hidden finance charge.
{¶ 10} The car was purchased without any warranty. After the down payment, customer failed to make any payments on the car. The first payment of $200.00 was due on November 1, 1997. The car stopped running on December 1, 1997.
{¶ 11} Customer testified that at merchant's direction she signed a blank odometer certification form on October 31, 1997. Merchant allegedly later filled in the mileage on the title at the time he applied for the certificate of title on December 8, 1997.[1] Merchant testified that he partially filled out the form in front of customer, but admitted that he did not give her a copy of the form when she left with the car. Rather, customer received a copy of the odometer disclosure form at the time she picked up her certificate of title from merchant at the end of December 1997.
{¶ 12} In early January 1998 merchant sued customer in small claims court for $671.25, the balance on the contract. Customer counterclaimed for violation of the federal Truth In Lending Act (TILA),15 U.S.C. § 1601 et seq.; the Ohio Retail Installment Sales Act (RISA), R.C. 1317.07; the Federal Odometer Act, 49 U.S.C. § 32705; the Ohio Odometer Act, R.C. 4549.45 and 4549.46; and the Ohio Consumer Sales Practice Act (CSPA).[2] Customer requested a judgment declaring the contract unenforceable, an injunction restraining the merchant from further violations of the law, a release from any security agreement arising from the transaction, "monetary judgment," and attorney fees and costs. The small claims court denied customer's motion to transfer the action to a higher court.
{¶ 13} The magistrate ruled that although the customer's purchase of the car constituted a consumer transaction under Ohio CSPA (R.C. 1345), she failed to request rescission in a timely manner. The court additionally noted that the small claims court lacked jurisdiction over a claim for equitable relief; the court therefore denied customer's claim for relief under the Ohio CSPA.
{¶ 14} The court also found that merchant did not qualify as a "creditor" under TILA and that therefore customer was not entitled to relief under this statute. The court ruled that merchant complied with the Ohio Odometer Act by providing the odometer reading on the certificate of transfer of title and that the Federal Odometer Act did not apply to this vehicle because it was over ten years old and thus exempt from the act per 49 C.F.R. § 580.5(c).[3]
{¶ 15} The court ruled that merchant violated the Ohio RISA by charging customer a "documentary service charge" without proving that this charge was a customary charge in the industry and awarded customer $200.00 in damages. As a result of this violation, the court held that customer was entitled to reasonable attorney fees for the violations of CSPA and RISA. Customer was subsequently awarded $600.00 in attorney fees, although the invoices submitted to the court at the hearing on attorney fees provided an itemized statement for $7,706.50.
{¶ 16} The court also found customer liable on merchant's complaint for the amount of $671.25 and offset this amount against the $200.00 award and $600.00 attorney fees, granting judgment for customer in the amount of $128.75 plus costs with statutory interest from the date of judgment. Appellant customer lists seven assignments of error.[4]
She argues the court erred in ruling that TILA did not apply, in ruling that the federal and state odometer laws were not applicable and/or violated, and in determining the amounts awarded for attorney fees and in the judgment.
{¶ 17} Appellant's first two assignments of error are related and will be addressed together:
 {¶ 18} I. THE COURT COMMITTED REVERSIBLE ERROR BECAUSE THE $19 EXCESS IN THE FILING FEE WAS A "FINANCE CHARGE" UNDER THE TRUTH IN LENDING ACT.
 {¶ 19} II. THE COURT COMMITTED REVERSIBLE ERROR IN NOT FINDING A VIOLATION OF THE TRUTH IN LENDING ACT BECAUSE THE CONTRACT FAILED TO DISCLOSE, INTER ALIA: (A) THE $19 AS A "FINANCE CHARGE"; AND (B) THE NUMBER, AMOUNT AND DUE DATE OF THE $71.25 PAYMENT.
{¶ 20} Congress passed the Truth In Lending Act to protect consumers from dishonest business tactics and to provide them with an accurate means of comparing credit prices and assessing the cost of deferring payment. Mourning v. Family Publications Service (1973),411 U.S. 356 at 364. "TILA is a remedial statute and should be given a broad, liberal construction so as to serve its purpose." Pearson v. EasyLiving, Inc. (1981), 534 F. Supp. 884 at 890. In fact, the failure to disclose does not even have to result in the consumer being deceived: "[i]t is not sufficient for a lender to comply with the spirit of TILA; strict compliance with the disclosure requirement is necessary." Id. Additionally, unless the lender or merchant has a statutory defense, "[o]nce a violation is found, liability is imposed * * *." Id.
{¶ 21} Further, the amount in question is not significant. The failure to clearly disclose a finance charge as required by TILA automatically triggers liability. Courts have held merchants liable for violating the act when the undisclosed amount was as small as $1.00.Buford v. Welcome Finance Co. (1971), 333 F. Supp. 1243; In re: Weaverv. Trust Company of Columbus (C.A. 5, 1980), 632 F.2d 460 (amount in dispute was $7.50.)
{¶ 22} Merchant claims, however, and the trial court held, that he is not liable under TILA because he does not fit the definition of a "creditor." TILA states
 {¶ 23} The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence * * *. (Emphasis added.)
{¶ 24} The regulation further restricts this definition to exclude any down payment as one of the four installment payments.12 C.F.R. § 226.2(a)(17).[5]
{¶ 25} The contract between the parties states that payments are due in three payments of $200.00 each. The merchant states that he forgot to include a final payment of $71.25, an amount necessary to reach the total amount agreed to by the parties. Even if we were to include this last payment, the number of payments would not exceed four. Under that clause, therefore, merchant does not qualify as a creditor.
{¶ 26} There is an alternative qualification, however, which the magistrate misunderstood.[6] The magistrate erroneously interpreted the statute to require both more than four installment payments and a finance charge, in order to qualify the merchant as a creditor under TILA. The trial court, therefore, did not address the issue of whether the excess charge in the filing fee constituted a finance charge.
{¶ 27} From the facts in the record, however, merchant qualifies as a creditor under the alternate clause which confers creditor status for a merchant when the contract is one in "which the payment of a finance charge is or may be required." Merchant argues that the extra $19.00 he included in the filing fee was a "documentary service charge" and not a finance charge. He relies on R.C. 1317.07, "Requirements of a retail installment contract," which states, "[a] documentary service charge customarily and presently being paid on May 9, 1949, in a particular business and area may be charged if the charge does not exceed fifty dollars per sale." Ohio law, however, does not control the application of the federal statute. 12 C.F.R. § 226.4(a) defines a finance charge as
 {¶ 28} the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.
{¶ 29} Examples of finance charges include "[s]ervice, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar amount without a credit feature."12 C.F.R. § 226.4(b).
{¶ 30} The regulation also provides a list of examples of charges which are not finance charges: a documentary service charge is not included in the exclusion list.
{¶ 31} In a case with facts almost identical to those in the case at bar, a federal court held that an excess amount charged for anything other than what the contract described and was actually paid for (here, filing fees) was a hidden finance charge. Williams v. Bill Watson Ford,Inc. (1976), 423 F. Supp. 345 at 348. There is no evidence in the case at bar that the filing fees included a documentary service charge. Unless the merchant can show he charges the identical "documentary service charge" in his cash transactions, the charge is a hidden finance charge.
{¶ 32} Customer's second assignment of error states that merchant violated the statute by failing to correctly state the payment terms. Because the trial court ruled that merchant is not a creditor and therefore that TILA does not apply to this case, the trial court did not address this issue. This case is remanded to the trial court to determine (1) whether merchant qualifies as a creditor because of the amount of credit he extends per year, and (2) whether the amount he charges for a filing fee in a credit contract exceeds the amount he charges for a filing fee on a cash sale, thereby constituting a finance charge. If the evidence shows that merchant is a creditor, the trial court is instructed to address the issue of whether he violated TILA in his documentation on the sales contract. If merchant is determined to be in violation of TILA, the trial court is further instructed to readdress the issue of attorney fees as mandated in 15 U.S.C. § 1640(a)(3).
{¶ 33} Appellant's third assignment of error states:
 {¶ 34} III. THE COURT COMMITTED REVERSIBLE ERROR BECAUSE THE OHIO ODOMETER ROLLBACK AND DISCLOSURE ACT WAS VIOLATED IN THIS CASE.
{¶ 35} Customer claims that because she was not provided with a copy of an odometer reading at the time she made her down payment and drove away in the auto, she was not provided with the odometer reading as required by law. Merchant counters that by stating the correct odometer reading on the certificate of title, he has complied with the law.[7]
We agree.
{¶ 36} Neitherparty disputes the accuracy of the reading, and customer admits that she knew the correct odometer reading when she drove the car from the lot.
{¶ 37} The Ohio Odometer and Rollback Disclosure Act, R.C. §§4549.41 through 4549.51, governs the procedure for disclosure of odometer readings in the sale or transfer of autos. R.C. 4549.46 states, in pertinent part, "[n]o transferor shall fail to provide the true and complete odometer disclosures required by section 4505.06 of the Revised Code." R.C. 4504.06 controls the procedure for applying for the certificate of title. It states in pertinent part, "[t]he registrar shall prescribe an affidavit in which the transferor shall swear * * * except as provided in this section, the true odometer reading of the motor vehicle." R.C. 4505.06(C)(1). The odometer disclosure statement then lists the three exceptions, one of which is that the "odometer reading reflects the amount of mileage in excess of its mechanical limits." This box is checked on the title for the car in question. While this odometer disclosure form is not required to be on the same paper as the certificate of title, it frequently is, and is in this case.
{¶ 38} This court has held that a car dealer has "complied with R.C. 4549.46 by providing complete disclosures on the back of the certificate of the title in question." Buchanan v. Spitzer Motor City,Inc. (Feb. 7, 1991), Cuyahoga App. Nos. 57893, 58058, 1991 Ohio App. LEXIS 528 at 25. Despite merchant's failure to provide customer with a copy of the odometer disclosure form at the time of the sale and despite his failure to fill in the mileage on the power of attorney form signed by customer for title transfer, merchant complied with Ohio law regarding disclosure of the odometer reading when he provided it on the certificate of title.
{¶ 39} Despite buyer's claim that seller was obliged to give an odometer statement to buyer at the time of sale, "R.C. 4549.46 does not provide a specific time frame for the disclosure of the odometer statement, nor does it require that the disclosure be made at the time of sale." T.C.I. Insurance v. Moore (June 17, 1991), Clermont App. No. CA90-12-111, 1991 Ohio App. LEXIS 2815, at *4. While we believe the better practice would be to disclose in writing the mileage on the car during negotiation for sale, Ohio law does not require this timing. Seller was not in violation of the law in the manner in which he disclosed the mileage to buyer by stating it on the title at the time of transfer.
{¶ 40} The trial court's ruling on this issue is affirmed.
{¶ 41} For her fourth assignment of error, customer states:
 {¶ 42} IV. THE COURT COMMITTED REVERSIBLE ERROR BECAUSE THE MOTOR VEHICLE INFORMATION AND COST SAVINGS ACT WAS VIOLATED IN THIS CASE.
{¶ 43} Customer objects to the magistrate's conclusion of law holding that the federal motor vehicle information and cost savings act does not apply to this transaction because the car in question was over ten years old at the time of the sale. The federal law in question, 49 U.S.C.S section 32705, states in pertinent part:
 {¶ 44} (a)(1) * * * Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure [concerning the odometer reading] * * *.
 {¶ 45} (5) The Secretary may exempt such classes or categories of vehicles as the Secretary deems appropriate from these requirements.
{¶ 46} The Secretary of Transportation then established49 C.F.R. 580.17 (a)(3), which states:
 {¶ 47} (a) A transferor * * * of any of the following motor vehicles need not disclose the vehicle's odometer mileage:
{¶ 48} * * *
 {¶ 49} (3) A vehicle that was manufactured in a model year beginning at least ten years before January 1 of the calendar year in which the transfer occurs * * *.
{¶ 50} Customer argues that other jurisdictions have found the law "void and unenforceable because the regulation is ultra vires." Appellant's brief at 11. Customer cites several cases holding that this law does not further the purpose of the Act, which is designed to protect the consumer. None of the case law customer cites, however, is controlling in this jurisdiction. She asks us to "hold that49 C.F.R. § 580.6(a)(3) is void and unenforceable and that the Federal Odometer Act applies in this case." Appellant's brief at 12. We decline to address this issue, however, because merchant did include the odometer information on the title at the time of transfer. As the magistrate stated in her findings of fact, merchant had
 {¶ 51} completed an Odometer Disclosure Statement which certified the number of miles on the vehicles [sic] as 23,797, which was signed by [customer] on October 31, 1997. The back of [merchant's] application for the Certificate of Title which was filed with the Clerk of Courts contained a certification of the mileage as 23,797.
{¶ 52} The regulation promulgated by the Secretary of Transportation describing the means by which a dealer shall provide the odometer information to a customer requires that "each transferor shall disclose the mileage to the transferee in writing on the title * * *. In the case of a transferor in whose name the vehicle is titled, the transferor shall disclose the mileage on the title, and not on a reassignment document." 49 C.F.R. § 580.5(c). Because the vehicle in question was titled to the merchant, he was required to disclose the odometer information on the title to comply with the regulation. He did provide this information on the title, as the magistrate stated in her conclusions of law:
 {¶ 53} Under the federal Motor Vehicle Information and Cost Savings Act [merchant] was required to tender a disclosure statement reflecting the odometer mileage at the time the ownership of the vehicle was transferred. The title of the vehicle in question did contain such a disclosure. Furthermore, 49 C.F.R. § 580.9(a)(3) exempts the vehicle in question from the federal law requirements because it is more than ten years old. The federal law does not address the time within which the certificate of title to a vehicle must be obtained and given to the buyer.
{¶ 54} Because merchant complied with the requirements of the federal statute, we, therefore, need not address whether the exception under 49 C.F.R. § 580.17(a)(3) for cars more than ten years old is enforceable. The fourth assignment of error is overruled.
{¶ 55} For her fifth assignment of error, customer states:
 {¶ 56} V. THE COURT COMMITTED REVERSIBLE ERROR BECAUSE THE MOTOR VEHICLE INFORMATION AND COST SAVINGS ACT WAS VIOLATED IN THIS CASE.
{¶ 57} Because we decided in the fourth assignment of error that the motor vehicle information and cost savings act did not apply in this case, this assignment of error is moot.
{¶ 58} Customer does not list a sixth assignment of error in her App.R. 16(A)(3) statement of the assignments of error, but she does argue one in her brief. In the text of the brief, the sixth assignment of error states:
 {¶ 59} VI. THE COURT COMMITTED REVERSIBLE ERROR IN NOT FINDING ADDITIONAL VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT.
{¶ 60} Customer asserts that the trial court, in addition to finding that the extra charge in the filing fee violated CSPA, should have found violations of the Ohio Consumer Sales Practices Act in merchant's failure to include the additional payment of $71.25 in the contract; his failure to apply for the Certificate of Title within the statutory time period required by R.C. 4505.06; and his violation of TILA and the state and federal odometer acts.
{¶ 61} Private damages under CSPA are limited: "the consumer may rescind the transaction or recover * * * three times the amount of his actual damages or two hundred dollars, whichever is greater * * *." R.C.1345.09(B). Customer, here, therefore, is mistaken in believing that finding additional violations of the CSPA in the contract would affect her damages award. Even if merchant has committed other violations of the CSPA, "where multiple violations are alleged to have occurred within one consumer sales transaction, multiple awards of statutory damages cannot be sustained." Rosenfield v. Tombragel (Dec. 31, 1996), Hamilton App. No. C-950871, 1996 Ohio App. LEXIS 5885, at *8-9. Customer can receive only one award of damages, whether rescission or the statutory monetary damages, regardless of how many different violations occurred in the contract. "The separate violations in the instant case formed a single instance of actionable conduct resulting in a single injury which was cured by rescission of the contract." Eckman v. Columbia Oldsmobile,Inc. (1989), 65 Ohio App.3d 719, 722. Similarly here, customer received only one injury resulting from the contract for the car. Customer, therefore, is limited to a maximum of $200 or three times her total damages.
{¶ 62} On the basis of plain error, we first must address an underlying problem. The magistrate erred when she determined the small claims court lacked jurisdiction to order rescission[8]:
 {¶ 63} In an action for recission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it. O.R.C. 1345.09(C). [Customer] did not attempt to rescind the transaction for the above-described acts of the [merchant] within a reasonable amount of time since [customer]'s first attempt at recission did not occur until she filed her counterclaim in late February, 1998. Furthermore, the Small Claims Division of Cleveland Municipal Court lacks jurisdiction over claims for equitable relief. O.R.C. 1925.02(A)(1). Therefore, [customer]'s request for recission of the contract is denied.
{¶ 64} The magistrate's analysis of rescission is erroneously grounded on the premise that all claims for rescission are actions in equity. This court has previously distinguished CSPA actions:
 {¶ 65} Contrary to the trial court's ruling in the case sub judice, consumer actions for rescission under CSPA are not actions in equity * * *. Rather, CSPA actions do not involve claims of common law fraud but raise solely legal issues * * *. The plaintiffs in their complaint do not plead rescission pursuant to common law but base their complaint solely on the statutory action under the Consumer Sales Practices Act or CSPA.
{¶ 66} Agee v. National City Bank (June 24, 1993), Cuyahoga App. No. 63408, 1993 Ohio App. LEXIS 3212, at *15-16. If the customer had requested rescission, therefore, the small claims court would have been required to award that remedy.
{¶ 67} The magistrate made a second mistake in deciding to award damages even though the magistrate believed rescission was requested. The magistrate lacked the authority to award different damages from those requested in the counterclaim. "The statute fails to grant the trial court the discretion to elect as between the two [remedies]. The language mandates the `consumer' may elect, not the court." Bierlein v. Alex'sContinental Inn (1984), 16 Ohio App.3d 294, 301.
{¶ 68} A third error occurred when, in her decision discussing CSPA, the magistrate erroneously states that customer elected rescission, not damages.[9] On the contrary, paragraph 24 of customer's counterclaim states, "[customer] is entitled to judgment against [seller] in an amount of (3) three times actual damages or Two Hundred Dollars ($200) for each unlawful act specified, whichever is greater, a declaration judgment, injunctive relief, attorney's fees and costs."
{¶ 69} Despite the magistrate's erroneous belief that customer had requested rescission instead of damages, however, and despite her erroneous belief that the court had the authority to award damages when rescission was requested, the award of the statutory maximum of $200 is correct and shall remain.
{¶ 70} For her seventh assignment of error, customer states:
 {¶ 71} VII. THE COURT COMMITTED REVERSIBLE ERROR IN AFFIRMING THE MAGISTRATE'S DECISION REGARDING A REASONABLE ATTORNEY FEE, WHICH WAS CONTRARY TO LAW AND/OR AN ABUSE OF DISCRETION AND/OR WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.
 {¶ 72} A. THE AWARD OF ATTORNEY FEES WAS CONTRARY TO LAW IN THAT IT FAILED TO SPECIFY THE REASONS FOR ITS DECISION AS REQUIRED BY BITTNER V. TRI-COUNTY TOYOTA (1991), 58 OHIO St.3d 143.
 {¶ 73} B. THE AWARD OF FEES CONSTITUTES AN ABUSE OF DISCRETION AND/OR WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.
{¶ 74} The magistrate stated that the customer was "entitled to an award of reasonable attorney's fees per R.C. 1345.09 because [merchant's] violations of the CSPA and RISA were knowingly committed." Magistrate's decision. The customer argues, however, that the trial court's award of only $600 for attorney fees was unreasonable and contrary to law when counsel had submitted an itemized statement documenting fees for this case in the amount of $7,706.50. The customer cites Bittner v. Tri-CountyToyota (1991), 58 Ohio St.3d 143 to support her argument that the court erroneously allowed fees only for the time counsel spent in trial. "When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR-2-106(B)." Id. at syllabus.
{¶ 75} The factors in DR 2-106(B) are:
 {¶ 76} (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 {¶ 77} (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 {¶ 78} (3) The fee customarily charged in the locality for similar legal services.
 {¶ 79} (4) The amount involved and the results obtained.
 {¶ 80} (5) The time limitations imposed by the client or by the circumstances.
 {¶ 81} (6) The nature and length of the professional relationship with the client.
 {¶ 82} (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 {¶ 83} (8) Whether the fee is fixed or contingent.
{¶ 84} Although the customer's attorney methodically addressed each factor listed in DR 2-106(B) in his testimony at the hearing on attorney fees, the magistrate failed to address these factors in her decision. Rather, the magistrate merely asserted she had considered the factors. The only relevant finding of fact the magistrate stated in her decision was, "[t]he trial in this matter lasted approximately 1 1/2 to 2 hours." Id.
{¶ 85} "Attorney fees in CSPA violations * * * must be determined on a case-by-case basis based on the number of hours reasonably expended plus other factors that might be applicable." Fletcher v. Don Foss
(1993), 90 Ohio App.3d 82, 90. A conclusory statement that fails to address unrefuted testimony is not adequate to support the court's award of attorney fees.
{¶ 86} The magistrate failed to acknowledge or discuss the fact that a large number of the attorney's hours were spent with the former magistrate trying to settle the case. Additionally, many of the motions filed by counsel were required because merchant refused to cooperate with discovery. For example, merchant twice failed to appear for scheduled depositions. As the Court noted in Bittner, the fees awarded in that case were in part a result of the merchant's failure to cooperate with discovery which "required Bittner's attorneys to expend their time and resources * * *. Bittner at 145. Rather, it appears that the trial court in the case at bar considered the amount of time counsel spent only in the actual trial and a small amount of preparation time.
{¶ 87} Counsel testified that he charged $175.00 per hour. The magistrate noted in the decision that the trial lasted between one-and-a-half and two hours. Counsel's fee for just those two hours would be $350.00. The remaining $250.00 awarded in attorney fees would have allowed less than one-and-a-half hours for trial preparation, all the remaining pretrials, research, motions, and canceled depositions. Clearly the magistrate's calculation cannot be correct. This court notes that its own research of the complex legal issues presented in this case has taken considerable time. To allocate only one-and-a-half hours to the attorney for this task is unreasonable and an abuse of discretion.
{¶ 88} The merchant emphasizes the fact that the amount in controversy is only $670. This point is misplaced, however. As the Supreme Court of Ohio stated in Bittner:
 {¶ 89} At the outset, we reject the contention that the amount of attorney fees awarded pursuant to R.C. 1345.09(F) must bear a direct relationship to the dollar amount of the settlement, between the consumer and the supplier. The Act was amended in 1978 to include the payment of attorney fees "* * * to prevent unfair, deceptive, and unconscionable acts and practices, to provide strong and effective remedies, both public and private, to assure that consumers will recover any damages caused by such acts and practices, and to eliminate any monetary incentives for suppliers to engage in such acts and practices." (137 Ohio Laws, Part II, 3219.)
 {¶ 90} In order for private citizens to obtain redress under the Act, they first must be able to obtain adequate legal representation. Private attorneys may be unwilling to accept consumer protection cases if the dollar amount they are permitted to bill their adversary is limited by the dollar amount of the recovery, especially since monetary damages in many instances under the Act are limited to $200. An attorney may expend inordinately large amounts of time and energy pursuing a claim that reaps relatively small monetary benefits for a prevailing plaintiff. We agree with the observation of the United States Supreme Court when it said: "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious * * * claims but relatively small potential damages to obtain redress from the courts." Riverside v. Rivera
(1986), 477 U.S. 561, 578.
 {¶ 91} In addition to addressing an individual wrong, pursuing a claim under the Act may produce a benefit to the community generally. A judgment for the consumer in such a case may discourage violations of the Act by others. Prohibiting private attorneys from recovering for the time they expend on a consumer protection case undermines both the purpose and deterrent effect of the Act.
{¶ 92} Bittner at 144.
{¶ 93} The Bitter court also considered the fact that the trial court in that case had "been involved in the pretrial proceedings" and therefore was aware of the effect the merchant's lack of cooperation had on the amount of time spent by counsel. In the case at bar, in contrast, the trial magistrate was involved only in the trial itself. The magistrate who had handled the case up until trial, including all the pretrials and settlement negotiations, had recused herself because of her extensive involvement with the negotiations. The trial magistrate has to rely upon testimony, therefore, to determine the scope of the pretrial expenditure of time. Findings that consider testimony of the proceedings prior to the trial are, therefore, also necessary.
{¶ 94} As this court held in Fletcher, "the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may within its discretion modify that calculation by application of the factors listed in DR 2-106(B), if applicable."Fletcher at 91. As the Supreme Court of Ohio clarified: "When making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination. Absent such a statement, it is not possible for an appellate court to conduct a meaningful review." Bittner
at 146, cited by Fletcher at 90-91. The monetary award of attorney fees is vacated and the case remanded for a full consideration of the DR 106-B factors to determine the amount of attorney fees to be awarded, consistent with this opinion.
{¶ 95} Finally, for her eighth assignment of error, customer states:
 {¶ 96} VIII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AFFIRMING THE MAGISTRATE'S COMPUTATION OF JUDGMENT.
{¶ 97} Customer points out that in computing the damages, the trial court failed to include the $19.00 "in actual damages the Magistrate found based upon the RISA violation." Appellant's brief at 21. The magistrate found that customer's "actual damages under RISA with respect to this violation are $19.00." Magistrate's decision. R.C. 1345.13
states, "[t]he remedies in sections 1345.01 to 1345.13 of the Revised Code, are in addition to remedies otherwise available for the same conduct under state or local law." The remedy under RISA, therefore, should have been awarded in addition to the remedy awarded under CSPA.
{¶ 98} The magistrate erred in determining the effect of merchant's violation of RISA. As noted, the magistrate held that merchant's "violations of the CSPA and RISA were knowingly committed." Magistrate's decision. R.C. 1317.08 as it existed at the time the contract was made, 1997,
 {¶ 99} * * * explicitly states that neither the retail installment contract nor the security interest created by the retail installment contract are enforceable against the buyer if the seller has violated RISA. Thus, according to the plain language of the statute, the seller may neither sue for the money owed in the contract nor retain right to repossess the goods. * * * In short, "the buyer is left with the goods and the seller is left with an unenforceable evidence of indebtedness. See Allied Invest. Credit Corp. v. Wagon Master, Inc. (Mar. 8, 1976), Lake App. No. 5-230, see, also, * * * Domestic Credit Corp. v. Vasquez (Jan. 29, 1981), Cuyahoga App. No. 41985.
{¶ 100} Glouster Community Bank v. Winchell (1995),103 Ohio App.3d 256, 264. See also, In the Matter of Dewie Sloan,Bankrupt (1968), 285 F. Supp. 1 ("Section 1317.08 provides that if prohibited charges are received by the retail seller, the retail buyer `may recover the total amount paid to the retail seller.' * * * [It] was the legislative intent to deprive the retail seller of all rights arising under such contract.")
{¶ 101} R.C. 1317.08 further stated in 1997:
 {¶ 102} No retail installment contract which evidences an indebtedness greater than that allowed by section 1317.06 or 1317.07 of the Revised Code and no retail installment contract in connection with which any charge prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer, or any other person who as surety, indorser, guarantor, or otherwise is liable on the obligation created by any retail buyer on any retail installment contract, and no security interest created by any such retail installment contract which is greater than that allowed by sections 1317.06 and 1317.07 of the Revised Code or in connection with which any charge is prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer or any of the aforementioned persons, in default under the terms of the retail installment contract. In order for a retail buyer, or any of the aforementioned persons liable on his obligation, to avail himself of this section, he must prove that the retail seller or the holder of the retail installment contract has been notified in writing of the overcharge and has failed within ten days of such notification to advise the retail buyer of a full credit, or he must prove that the overcharge has been willful. A correction of any overcharge within sixty days of the date of making of the retail installment contract is conclusive proof of lack of willfulness. This section applies to cases in which recovery is sought from the retail seller or holder of the retail installment contract. If charges greater in amount than those provided for in sections 1317.01 to 1317.11, inclusive, of the Revised Code, are received by the retail seller, his agent, assignee, or successor in interest, the retail buyer, his assignee, or successor in interest may recover the total amount paid to the retail seller, his agent, assignee, or successor in interest, from the retail seller or the holder of the retail installment contract. (Emphasis added).
{¶ 103} We therefore are constrained to apply the law to this contract as it existed at the time the contract was made: "`when a contract is once made, the law then in force defines the duties and rights of the parties under it.'" Aetna v. Schilling (1993),67 Ohio St.3d 164, 168, quoting Goodale v. Fennell (1875), 27 Ohio St. 426,432. Although the legislature later amended the law, we must apply the law as it existed at the time the contract was made in 1997.
{¶ 104} Customer, therefore, is not liable to merchant for the $671.25 remaining on the unenforceable contract. Nor does customer have to return the car which was the subject of the contract. Further, merchant is obliged to return any monies received from customer on the contract.
{¶ 105} This case is affirmed in part and reversed in part and remanded for examination of the issues of whether merchant qualifies as a creditor under TILA by addressing the amount of credit he extends per year and whether the amount he charges for a filing fee in a credit transaction exceeds the amount he charges for a filing fee on a cash sale and thereby constitutes a finance charge. If the evidence shows that merchant is a creditor, the trial court is instructed to address the issue of whether he violated TILA in his documentation on the sales contract. If merchant is found to be in violation of TILA, the trial court is further instructed to readdress the issue of attorney fees not only as addressed in CSPA, but also as mandated in TILA,15 U.S.C. § 1640(a)(3):
 {¶ 106} Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter * * * with respect to any person is liable to such person * * * in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 125 [15 U.S.C.S § 1635], the costs of the action, together with a reasonable attorney's fee as determined by the court * * *.
{¶ 107} On remand, the trial court shall also readdress the issue of attorney fees as mandated under RISA and the other RISA issues, consistent with this opinion.
This cause is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.
It is, therefore, ordered that appellant and appellee shall pay their own costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., CONCURS MICHAEL J. CORRIGAN, J., DISSENTS,(See Dissenting Opinion).
[1] The memorandum of certificate of title was obtained on December 30, 1997.
[2] Customer fails to cite a code section in her counterclaim to support this claim.
[3] We note that some courts have held that the Federal Odometer "Act does not authorize the Secretary to make an exception to the disclosure requirements for transferors of vehicles that are ten or more years old." Lee v. Gallup Auto Sales (1998), 135 F.3d 1359,1361-1362. The exemption still exists in the regulation, however, which is now numbered 49 C.F.R. § 580.17(a)(3).
[4] Assignment Number 6 was omitted from appellant's statement of assignments of error.
[5] The regulation also defines "regularly extends" as extending credit "more than 25 times * * * in the preceding calendar year." 12 C.F.R. (a)(17) n. 3. Neither the parties nor the court addressed the frequency with which merchant extended credit to his customers, and we cannot discern from the record if he qualifies as a creditor under this portion of the definition.
[6] In her decision the magistrate correctly states the statute. She then notes, "[i]n the present case, Plaintiff extended credit to the Defendant in the amount of $671.25, which would have been payable in four installments. Therefore, TILA does not apply to the transaction in the present case and Defendant is not entitled to prevail on her counterclaim for damages under this statute." Magistrate's Decision with Findings of Fact and Conclusions of Law at 2, 3. She bases her decision that seller is not a creditor on this interpretation of the law.
The magistrate's reading of the law omits the alternative means by which defendant could have qualified as a creditor under the first clause of the statute. The first clause states that a creditor is either a person who extends credit with over four installments or one who charges afinance charge for extending credit. The buyer clearly asserts that the unexplained charge of $19.00 is a finance charge. This charge qualifies the seller as a creditor according to the statute.
The dissent ignores this mistake and concludes that because "[t]he trial court already has extensively addressed the issue and determined that TILA regulations were not, in fact, applicable to this transaction[,]" the appeals court has no business correcting the trial court. On the contrary, the fundamental purpose of the appellate court is to correct such mistakes of law. The dissent ignores the fact that the trial court's decision was predicated on a misinterpretation of the law. A significant misinterpretation of the law which directly affects the outcome of the case, moreover, qualifies as an abuse of discretion, contrary to the dissent's opinion. (Emphasis added).
[7] The Magistrate's Decision with findings of fact and conclusions of law states, "Defendant was given her copy of the Odometer Disclosure statement when she picked up her Memorandum of Certificate of Title from Plaintiff at the end of December, 1997." Id. at 2.
[8] It is unclear why, if the magistrate believed that the small claims court lacked jurisdiction over the counterclaim, she denied customer's motion to transfer the case to the municipal court, which would have had that jurisdiction.
[9] Customer requested "restitution" under RISA, R.C. 1317.08, which is addressed in Assignment of Error VIII. Her counterclaim never asks for "rescission."