**Roberta J. HOOK, et al., Plaintiffs,**

v.

**Del BAKER, dba Del's Auto Sales, Defendant.**

No. C2–02–CV–901.

United States District Court, S.D. Ohio, Eastern Division.

June 29, 2004.

Steven C. Shane, Bellevue, KY, for Plaintiffs.

Ray Jetmore King, Gahanna, OH, for Defendant.

### OPINION AND ORDER

FROST, District Judge.

This matter is before the Court on Class Plaintiff's Motion for Summary Judgment Liability Only (Doc. # 51); Memorandum Contra of the Defendant, Del Baker, dba Del's Auto Sales, to Plaintiff's Motion for Summary Judgment Liability Only (Doc. # 53); and, Class Plaintiff's Reply to Defendant's Memorandum In Opposition to Plaintiff's Motion for Summary Judgment (Doc. # 55). The Court finds the plaintiff's motion (doc. # 51) to be well-taken and the Court **GRANTS** the same.

Defendant's Amended Memorandum Contra to Plaintiff's Motion for Summary Judgment (Doc. # 59) was untimely filed on June 25, 2004. Any memorandum in opposition to plaintiff's motion was to be filed within twenty-one (21) days from the date of service set forth in the certificate of service attached to plaintiff's motion. S.D. Ohio Civ. R. 7.2(a)(2). Thus, in accordance with the local rule, any memorandum in opposition to plaintiff's motion, filed on May 4, 2004, was to be filed by defendant on or before May 28, 2004. Defendant failed to adhere to this deadline.

Thus, because defendant has not moved the Court for an extension of time in which to respond to plaintiff's motion, nor sought leave of the Court to supplement his memorandum in opposition, defendant's amended memorandum contra (doc. # 59) untimely filed on June 25, 2004 shall not be considered by the Court.

### I. NATURE OF PROCEEDINGS

Class plaintiff, Roberta Hook and all similarly situated persons, ("plaintiff") move the Court for summary judgment on plaintiff's claims brought pursuant to the federal Truth–In–Lending Act, 15 U.S.C. § 1601, et seq. ("TILA") and the Ohio Retail Installment Sales Act, R.C. § 1317.01, et seq ("ORISA"). Plaintiff specifically argues that no material facts exist as to whether the defendant failed to disclose the number of payments scheduled to repay any indebtedness to defendant, to accurately disclose the finance charge, to accurately disclose the Annual Percentage Rate ("APR"), to accurately disclose the total of payments, or the total sales price in connection, with any consumer transaction. Plaintiff also asserts that no material factual dispute exists as to whether defendant assessed or contracted for a documentary service charge in excess of $50.00 in connection with financing retail installment sales transactions. Conversely, defendant argues that the plaintiff has never been overcharged because the plaintiff has not paid the sums

due to the defendant. The Court addresses plaintiff's motion below.

## II. FACTS

Defendant owns and operates a used car lot located at 80 West Main Street, Newark, Ohio 43055. On or about September 21, 2001 named plaintiff, Roberta Hook, and defendant entered into a consumer credit transaction in the form of a retail installment sales contract and security agreement whereby defendant sold and then financed for class plaintiff a 1990 Oldsmobile Cutlass two-door vehicle. (Baker Dep. Vol. II at 20.) In connection with the financing of the vehicle, defendant provided class plaintiff with a truth-lending disclosure statement and security interest ("disclosure document") as required by TILA, 15 U.S.C. 1601, *et. seq.* (Baker Dep. Vol. II Ex. A).

Listed on defendant's disclosure document is a charge of $200.00 labeled "nontaxable charges." (Baker Dep. Vol. II Ex. A.) Absent from defendant's disclosure document are any finance charges imposed upon plaintiff as an incident to the extension of credit and the disclosure of the APR of any such finance charges. Also noticeably absent from the disclosure document is the total sales price of the transaction, the total number of payments in the transaction, and the number of payments that class plaintiff and the class of persons she represents had to make in order to repay their indebtedness. (Baker Dep. Vol. II Ex. A).

## III. STANDARD OF REVIEW

The procedure for considering whether summary judgment is appropriate is set forth in rule 56(c) of the Federal Rules of Civil Procedure, which provides:

[S]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment on the pleadings.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id.* Summary Judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Electronics Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Additionally, in responding to a summary judgment motion, the nonmoving party:

[c]annot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely " 'show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative

duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## IV. DISCUSSION

### Federal Truth In Lending Act Claim

■ The Federal Truth–In–Lending Act requires creditors to accurately disclose certain material credit terms to borrowers in connection with consumer credit transactions. *See* 15 U.S.C. § 1638(a). Plaintiff claims that the defendant failed to disclose numerous material credit terms, as required by the TILA, when selling and financing used motor vehicles to the class members. The Court agrees.[1]

### 1. Finance charges, APR and Total of Payments

■ 15 U.S.C. § 1638 expressly states, in part, that a creditor for each consumer credit transaction (other than under an open end credit plan) shall disclose each of the following items:

(3) The finance charge, not itemized, using that term.

(4) The finance charge expressed as an annual percentage rate, using that term. This shall not be required if the amount financed does not exceed $75 and the finance charge does not exceed $5, or if the amount financed exceeds $75 and the finance charge does not exceed $7.50.

(5) The sum of the amount financed and the finance charge, which shall be termed the total of payments.

15 U.S.C. § 1638(a)(3)-(5). The above language clearly instructs that creditors have the duty to disclose all finance charges, to disclose finance charges expressed as an annual percentage rate and to disclose the finance charges in addition to the amount financed. Thus, the Court must determine whether, as a matter of law, the $200.00 fee labeled "non-taxable charges" is a "finance fee" and thereby should have been disclosed as such.

■ The TILA defines "finance charge":

Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction.

15 U.S.C. § 1605(a). The regulations promulgated in connection with the TILA, commonly referred to as Regulation Z, similarly define "finance charge":

The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

*See Kilbourn v. Candy Ford–Mercury, Inc.*, 209 F.R.D. 121, 128 –129 (W.D.Mich. 2002) (citing 12 C.F.R. § 226.4(a)). These provisions require sellers to disclose as "finance charges" any fee payable by credit customers but not by cash customers in comparable transactions. *Id.*

---

1. The Court shall discuss the various alleged TILA violations despite the fact that the class plaintiffs are entitled to a single recovery. 15 U.S.C.A. § 1640(g): "The multiple failure to disclose...shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries."

In order to prevail on her claim that defendant failed to disclose this hidden finance charge, the $200.00 fee, plaintiff must therefore demonstrate a "causal connection" between the higher price and the extension of credit. *See Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir.2001); *Kilbourn*, 209 F.R.D. at 129. Plaintiff has shown this connection. The testimony of defendant himself supports plaintiff's claim that the $200.00 document fee was assessed only to customers purchasing automobiles from defendant on credit and not to customers who bought such vehicles with cash.[2] Defendant's deposition testimony regarding the $200.00 documentary preparation fee is as follows:

**Q:** Okay, could you explain for us what that is sir?

**A:** We charge them $200. We call it a doc. fee.

**Q:** A documentary preparation fee?

**A:** That's what it amounts to. That pays me for running to the title office, putting the mortgage on the title, worrying about all the headaches with them paying their payments on time.

**Q:** Okay, so, Mr. baker, let's see of I understand. This documentary fee, that was only assessed in connection with deals that you financed, correct?

**A:** Right.

(Baker Dep. Vol. II at 24.)

This testimony is direct evidence that the defendant's documentary preparation fee was assessed to customers financing the purchase of an automobile by credit and not those purchasing an automobile with cash. Such direct evidence is sufficient to establish a TILA violation. *See Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir.2001) ("What would certainly suffice for TILA is direct evidence: statements that the price was increased because the purchase was made on credit").

The defendant's documentary preparation fee was assessed because of the extension of credit; in other words, the document fee was an undisclosed finance fee.[3] Therefore, the Court finds that defendant's failure to disclose this finance charge in his transactions with class plaintiffs constitutes a violation of the TILA, 15 U.S.C. § 1638(a)(3). *See Compton v. Altavista Motors, Inc.*, 121 F.Supp.2d 932 (W.D.Va. 2000) (Title processing fee that automobile dealer made mandatory for credit customers, but not for cash customers, was charge "incident to" extension of credit and thus subject to TILA disclosure requirements as finance charge.) *Cf. Alston v. Crown Auto, Inc.* 224 F.3d 332, 334 (4th Cir.2000) ( [plaintiff] presented no evidence to refute Crown Auto's position that its general practice is to charge the $85.00 fee to all customers, credit and cash alike. Because Crown Auto's processing fee is payable in comparable cash transactions, we cannot conclude that the district court erred in concluding that the processing fee was not a "finance charge").

**Q:** Is it reasonable and accurate to say that in the vast majority of your sales—your financial transactions, that you charge a hundred or more dollars as a documentary service fee?

**A:** Right.

**Q:** Okay, that's accurate. Okay, fine. Okay, now, you don't charge a finance charge, correct?

**A:** That's the same as a finance charge.

(Baker Dep. Vol. II at 27).

---

2. It should be noted that defendant affirms that Baker Dep. Vol. II Ex. A is, in fact, the document that defendant considered to serve as his credit disclosure statement. In it (Baker Dep. Vol. II Ex. A) defendant makes all the credit disclosures in connection with any credit transaction that defendant entered into. (Baker Dep. Vol. II at 26–27).

3. The Court further notes that defendant characterized the documentary preparation fee a "finance charge." The testimony reads:

Furthermore, since the defendant failed to disclose the documentary preparation fee as a finance charge, it goes without saying that the defendant also failed to disclose the finance charge as an APR, which constitutes a violation of 15 U.S.C. § 1638(a)(4). Finally, defendant's failure to disclose any finance charge to class plaintiffs results also in his failure to disclose the "total of payments," or sum of the amount financed and the finance charge, of the transaction. The failure to fully and accurately disclose the total of payments results in the violation of 15 U.S.C. § 1638(a)(5).

## 2. Disclosure of Payment Schedule

■ Plaintiff offers an additional theory of civil liability against the defendant; that defendant failed to disclose the number, amount, and due dates or period of payments owed to repay the total of payments, as required by the TILA. 15 U.S.C. § 1638(a)(6) states [4]:

> For each consumer transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:
>
> (6) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

Taken as a whole, the documents that defendant provided to the plaintiff adequately disclose the number, amount, and due dates of payments scheduled to repay the total of payments. (Baker Dep. Vol. II Ex. A, Ex. B, and Ex. C.) Exhibit A, defendant's "purchase order" states the plaintiff "will pay $50.00 per week starting 09–28–2001." Defendant's deposition testimony further establishes that the defendant disclosed the number of payments that it would take to pay of the total of

payments on "the lien document" or "security agreement." (Baker Dep. Vol. II at 30–31). Additionally, defendant testified that all documents were provided to plaintiff at the time of the transaction.[5]

In light of the above evidence, the Court finds that, taken as a whole, defendant's purchase order (Baker Dep. Vol. II Ex. A), lien agreement (Baker Dep. Vol. II Ex. C) and payment ledger (Baker Dep. Vol. II Ex. B) meet the disclosure requirements of § 1638(a)(6). *See Castle v. Rona Enterprises, Inc.*, 49 Fed.Appx. 24, 25, 2002 WL 31269649 (6th Cir.2002) (finding no requirement under the TILA that the payment schedule be disclosed in one place or one figure). Plaintiff has not sufficiently alleged a TILA claim based upon a violation of § 1638(a)(6).[6]

## 3. *Claim under the Ohio Retail Installment Sales Act ("RISA")*

■ In addition to plaintiff's claim based upon defendant's alleged TILA violations, plaintiff also brings a claim pursuant to RISA, which governs retail installment sales transactions. Plaintiff's transaction with defendant for the purchase of an automobile is a consumer transaction in which the cash price is paid in installments over a period of time, and is therefore within the scope of RISA. *See* Ohio Rev.Code § 1317.01(A). RISA expressly authorizes and regulates charges that may be assessed in connection with retail installment sales and sets monetary limits on such charges. The authority to charge a documentary service fee in connection with a retail installment sale is within this category.

■ Ohio Rev.Code § 1317.07 permits an additional fee that may be charged

4. *See also* Regulation Z, 12 C.F.R. 226.18(g).

5. (Baker Dep. Vol. II at 30–32).

6. Plaintiff did however sufficiently set forth a TILA claim based upon the violations of 15 U.S.C. § 1638(a)(1–5).

is a "documentary service charge." However, only a fee of up to $100.00 may be charged as this fee. *See* OH CONSUMER L § 11:27 (2004) (citing 2003 H.B. 95, eff. 9–26–03.) Overcharging is a violation of the ORISA. *Rothacher v. Beaters and Better, Inc.*, 1998 WL 957060 (Ohio Com. Pl.1998). The Court thus finds that defendant's "documentary preparation fee" in the amount of $200.00 is a violation of the RISA as a matter of law.

In his memorandum in opposition, it appears that defendant intends to argue that no TILA or RISA violation occurred because defendant never collected any overcharge. (Mem. Opp'n. at 2–3.) Defendant argues that he cannot found to have violated either the federal or state statute as a matter of law because a material factual dispute exists as to whether the defendant ever collected the overcharge. (Def. Mem. Opp'n. at 2–3.)[7] Defendant, however, neglects the fact that his violation of the above statutes occurred when he charged consumers an excessive documentary service charge, i.e., a charge over $100.00 and because he failed to properly disclose credit terms. Whether or not plaintiff paid the defendant the alleged overcharge is simply irrelevant.

Finally, defendant submits that plaintiff is not entitled to summary judgment on the RISA claim because a factual dispute exists as to whether the overcharge of the documentary service fee was "willful." Defendant argues that the Court cannot determine the willfulness of his actions as a matter of law. The Court disagrees.

■ In order to recover any overcharge, plaintiff must show that the overcharge by defendant was willful. Ohio Rev.Code § 1317.08. This prerequisite may be met by one of two ways. In either instance, a seller's correction of any overcharge within sixty days of the date of making the retail installment contract is conclusive proof of lack of willfulness. Ohio Rev.Code § 1317.08(B).

■ A plaintiff may show that a seller's overcharge is willful by showing that the creditor was notified in writing of the overcharge and failed to return the overcharge within 10 days. *See* Ohio Rev.Code § 1317.08(B). There is no evidence that plaintiff ever notified defendant that there was an overcharge or requested a refund. Thus, plaintiff cannot prove willfulness in this manner.

■ Willfulness under Section 1317.08(B) may be shown in another manner. The statute provides that in order to prove a seller liable under this section "a person must prove that the overcharge has been willful." *Id.* In the context of RISA cases, Ohio courts define "willful" as "intentional or purposeful." *See Kreitzer v. Thrifty Foods*, No. 8970, 1985 WL 8776 (Ohio App. 2 Dist. Aug. 5, 1985) (citing *Washington Township v. Rapp*, 197 N.E. 413 (1934)); *see also Sonn v. Taylor*, 1993 WL 382248, *7 (Ohio App. 4 Dist.1993).

■ An overcharge is willful, or intentional and purposeful, per se where the overcharge is included in the printed contract form. *See Glouster Community Bank v. Winchell*, 103 Ohio App.3d 256, 659 N.E.2d 330, 335 (1995) ( [I]t is well settled that the inclusion of the illegal charge in a preprinted contract form constitutes a willing violation of RISA.) *See also Sonn, supra* (stating "the buyer need not show that the seller knew the act violated the law; the buyer need only show

---

**7.** Defendant argues that a factual dispute also exists on a counter-claim that defendant has filed against plaintiff. (Mem. Opp'n. at 2.) To date defendant has filed no such counter-claim in this action.

the seller 'intended to impose a charge which violates the act.' ")

 Defendant's overcharge was illegal per se. The overcharge was listed on defendant's preprinted form and uses the language "non-taxable charge." Defendant admitted to using this form several hundred times since 1998. (Baker Dep. Vol. II at 23–24.) This is conclusive evidence that the inclusion of the "documentary preparation fee" was intentionally and purposefully included in defendant's retail sales contract. This overcharge was therefore willful. *See Elsea, Inc. v. Stapleton,* 1998 WL 391943, 1998 Ohio App. Lexis 3165 (Ohio App. 4 Dist.1998).

The Court finds that defendant's documentary preparation fee in excess of $100.00 is willful, as a matter of law. Defendant's overcharge, or "non-taxable" documentary production fee, is therefore a violation of Ohio's Retail Installment Sales Act, Ohio Rev.Code § 1317.01, *et. seq.*

## V. *CONCLUSION*

For the reasons discussed above, the Court finds that no material facts are in dispute as to whether defendant violated the TILA and Ohio's RISA. Accordingly, plaintiff's motion for summary judgment on defendant's liability only (doc. # 51) is **GRANTED.**

**IT IS SO ORDERED.**