NORTH SHORE AUTO FINANCING, INC., d.b.a.
Car Now Acceptance Corporation, Appellee,

v.

BLOCK et al., Appellants.

[Cite as *N. Shore Auto Financing, Inc. v. Block*, 188 Ohio App.3d 48, 2010-Ohio-2447.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92316

Decided June 3, 2010.

Reminger Co., L.P.A., Roy A. Hulme, and Holly M. Wilson; Summers & Baker Co., L.P.A., and William L. Summers, for appellee.

Ronald Frederick & Associates Co., L.P.A., Ronald I. Frederick, and John L. Cullen; Roddy, Klein & Ryan and John J. Roddy, for appellants.

MARY J. BOYLE, Judge.

{¶ 1} Defendants-appellants, Andrew Block and other members of the certified Usury Class ("Block"), appeal from the trial court's judgment, rendered after a bench trial, in favor of plaintiff-appellee, North Shore Auto Financing, Inc., d.b.a. Car Now Acceptance Corporation ("CNAC"), and third-party defendant North Shore Auto Sales, d.b.a. J.D. Byrider ("North Shore"), on their claims for violations of the Retail Installment Sales Act ("RISA"). Finding merit the appeal, we reverse and remand.

### Procedural History and Facts

{¶ 2} On February 3, 1996, Block purchased a 1988 Chevrolet Cavalier from North Shore. To finance the purchase, Block and North Shore entered into a retail installment contract and security agreement. North Shore, which had

purchased vendor's single-interest ("VSI")[1] insurance from Interstate Company, included a $35 charge for VSI insurance in the "Amount Financed" section on the installment contract. In connection with the financing, North Shore also charged an interest rate of 25 percent per annum, the legal maximum under R.C. 1317.061. North Shore then assigned the contract to CNAC.

{¶ 3} This $35 charge, along with CNAC's repossession notices, is the impetus of the protracted history of this case. See *N. Shore Auto Financing, Inc. v. Block*, 8th Dist. No. 82226, 2003-Ohio-3964, 2003 WL 21714583 ("*Block I*") (affirming class certification); *N. Shore Auto Financing, Inc. v. Block*, 176 Ohio App.3d 205, 2008-Ohio-1708, 891 N.E.2d 793 ("*Block II*") (providing a detailed procedural history of the case). The $35 VSI premium remains an issue and is the focal point of the instant appeal. For the sake of brevity, however, we limit our discussion of the underlying facts to those necessary for the disposition of this appeal.

{¶ 4} Following a collection action commenced against Block by CNAC, Block counterclaimed against CNAC and sued North Shore as a third-party defendant, alleging that CNAC and North Shore had violated RISA.[2] Specifically, he alleged that the $35 VSI charge was actually an undisclosed finance charge that increased the interest rate under the financing agreement above the 25 percent per annum maximum, resulting in North Shore having violated RISA's usury provision under R.C. 1317.061. Block's RISA claim is premised on North Shore's alleged failure to meet federal Truth in Lending Act[3] ("TILA") disclosure requirements that are a precondition to excluding the $35 VSI premium from the finance charge. Block also alleged that North Shore's policy for VSI insurance did not contain a waiver of subrogation, which is also a necessary prerequisite to treat a VSI premium as part of the amount financed as opposed to a finance charge.

{¶ 5} Block sought class certification on the claim, i.e., "the Usury Class," which the trial court granted and we subsequently affirmed. See *Block I*.

---

1. "Generally speaking, VSI insurance protects a [lender] against the risk of uninsured physical loss or damage to the automobile collateral because the borrower ha[s] failed to obtain or to maintain insurance on the automobile collateral. The insured (lender) can make a claim under a VSI policy when a borrower defaults on a car loan and the car, when repossessed by the lender, is in a damaged condition and the borrower does not have other insurance to repair the damage." *Credit Gen. Ins. Co. v. Marine Midland Bank, N.A.* (Aug. 24, 1992), S.D.Ohio No. C–3–86–561, 1992 WL 1258518.

2. R.C. 1317.01 et seq.

3. Section 1601 et seq., Title 15, U.S.Code.

{¶ 6} The trial court conducted a bench trial as to the claims of the Usury Class and ultimately found in favor of North Shore and CNAC. The court found that the $35 VSI premium included in Block's retail installment contract did not violate RISA because North Shore had requested that Interstate issue a VSI policy with a waiver of subrogation, and although Interstate erroneously issued a policy with subrogation rights preserved, "once the error was realized, it was corrected via reformation" (albeit nearly eight years after Block purchased a car from North Shore). As to North Shore's compliance with the TILA's disclosure requirements, the court applied a prejudice analysis, finding that Block was not prejudiced by North Shore's failure to disclose that he could have purchased VSI insurance elsewhere when the record revealed that the insurance was not available to borrowers on the open market. Finally, the court concluded that Block's RISA claims failed because he did not demonstrate that the $35 charge constituted a "willful" violation under RISA, nor did he provide North Shore with notice of its usury violations in the manner required by RISA.

{¶ 7} Block appeals the decision, raising a single assignment of error,[4] but setting forth many arguments in support of his broad assertion that the trial court misapplied the law, misconstrued the evidence, and wrongly concluded that there was no RISA violation.

## Standard of Review

{¶ 8} When reviewing civil appeals from bench trials, we apply a manifest-weight standard of review. App.R. 12(C); *Seasons Coal v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. We are guided by the presumption that the trial court's findings were correct, and we will not reverse its decision as against the manifest weight of the evidence if it is supported by some competent, credible evidence going to all the essential elements of the case. Id. at 80, 10 OBR 408, 461 N.E.2d 1273, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. But despite this deferential standard of review, "a finding of an error in law is a legitimate ground for reversal." Id. at 79, 10 OBR 408, 461 N.E.2d 1273.

## RISA Violation

A. *"Finance Charge" v. "Amount Financed"*

{¶ 9} The resolution of this case hinges on whether the $35 VSI premium constitutes a "finance charge" or was properly included in the "amount financed" under the financing agreement. R.C. 1317.061, which is a part of RISA and the

---

4. The sole assignment of error states: "Whether, in a Retail Installment Sales Agreement, [North Shore] committed usury by including a charge in the amount financed that should have been treated as a finance charge under the Retail Installment Sales Act."

basis for Block's claim, provides that "a retail seller * * * may contract for and receive finance charges or interest at any rate or rates agreed upon or consented to by the parties to the retail installment contract * * * but not exceeding an annual percentage rate of twenty-five percent." Therefore, if the $35 VSI premium is a finance charge, it must be added to the interest rate stated under the retail installment contract, which would push the APR beyond the 25 percent maximum allowed under R.C. 1317.061.

{¶ 10} Initially, we note that the TILA requires state laws regarding disclosure of finance charges to be read consistently with federal regulations on the same subject. Section 1610(a)(1), Title 15, U.S.Code; *Ellis v. Hensley* (Aug. 16, 1979), 8th Dist. No. 39126, 1979 WL 52452. Accordingly, the TILA finance-charge rules are determinative as to whether the VSI premium constitutes a finance charge in the instant case.

{¶ 11} Typically, under the TILA, a creditor who requires a borrower to purchase VSI insurance must list the VSI insurance as a "finance charge." Section 1605(c), Title 15, U.S.Code. But an exception exists, allowing the VSI insurance to be designated as part of the "amount financed," if all of the following conditions are met: (1) the creditor makes a "clear and specific" statement to the consumer that the insurance may be obtained from a person of the consumer's choice, (2) the premium for the initial term of insurance is clearly disclosed if the coverage is obtained from the creditor, and (3) the insurer waives all rights of subrogation against the consumer. Id. and Regulation Z, Section 226.4(d)(2)(i) and (ii), Title 12, C.F.R.

{¶ 12} Although Block contends that the trial court erred with respect to all three, we find that his arguments related to the first two conditions are dispositive and limit our discussion to these two.

{¶ 13} At trial, the evidence was undisputed that North Shore failed to inform Block that he could purchase VSI insurance from another source. The evidence further revealed that the installment contract did not specify a premium for VSI insurance and marked the space provided for disclosure as "N/A" (not applicable). But the contract lists an "Amount Paid to Insurance Companies" on the second page under the "Amount Financed," where the $35 charge was stated.

{¶ 14} The trial court, however, did not find this to be a violation of the TILA disclosure requirements because it found that "the VSI policy purchased by North Shore from Interstate was not available on the open market." It concluded that "the failure to advise a customer of the option to do something they cannot do hardly can be deemed prejudicial." The court further reasoned that TILA's purpose of "meaningful disclosure of credit terms" would not be served "by requiring North Shore to notify Block that he had the right to purchase VSI insurance from a vendor of his choosing when no such vendor was available."

The court also noted that "the contract language notifying Block that he had the right to obtain single interest insurance from anyone other than North Shore is marked 'N/A' in recognition of the fact that VSI insurance was not available to Block on the open market."

{¶ 15} On appeal, Block argues that the trial court erroneously ignored the clear mandates of the TILA and improperly excused North Shore from having to comply based on a futility analysis, despite the lack of any supporting authority. North Shore counters that the trial court properly applied common sense and that no violation can exist when the record reveals the unavailability of the insurance elsewhere. It essentially contends that strict adherence is not necessary, especially when the purpose of the act is not served. We find North Shore's arguments misplaced and agree with Block that the trial court misapplied the law.

{¶ 16} As this court has previously recognized, " '[i]t is not sufficient for a lender to comply with the spirit of TILA; strict compliance with the disclosure requirement is necessary.' " *Ferrari v. Howard*, 8th Dist. No. 77654, 2002-Ohio-3539, quoting *Pearson v. Easy Living, Inc.* (S.D.Ohio 1981), 534 F.Supp. 884, 890. Indeed, in the context of VSI insurance, strict adherence of the TILA is required if the creditor wishes to exclude the VSI charge as a finance charge. See *Lifanda v. Elmhurst* (C.A.7, 2001), 237 F.3d 803.

{¶ 17} Here, although the trial court found that VSI insurance was not available on the open market to individual consumers based on the testimony offered by North Shore's insurance agent, we find this testimony to be irrelevant. The TILA does not recognize the alleged unavailability of VSI insurance as a defense or an exception to its clear disclosure requirements. To the contrary, the Commentary to Regulation Z makes clear that a creditor cannot avoid liability by failing to adhere to this requirement, regardless of the availability of VSI insurance: "To exclude property insurance premiums or charges from the finance charge, the creditor must allow the consumer to choose the insurer and disclose that fact. * * * The requirement that an option be given does not require that the insurance be readily available from other sources." Id.; see also Rohner & Miller, Truth in Lending (2000) 160–161 and fn. 347 ("It is irrelevant that the property insurance which the consumer has the option to obtain from third parties may not be readily available from other sources. * * * This is true even in the case of VSI insurance, which is generally not available except through the creditor").

{¶ 18} And although North Shore characterizes its nondisclosure as a way to ensure more meaningful disclosure to its consumers, we cannot agree. First, the evidence at trial reveals that North Shore marked the space provided for disclosure of the cost of VSI on the installment contract as "N/A" because it

believed that it did not apply—not that it was unavailable to consumers in the open market.[5]   Second, we agree with Block that if North Shore's true intent in failing to notify consumers that it had the option to buy VSI insurance elsewhere was to avoid misleading them, North Shore could have exercised a number of other options without violating the law, such as "(1) disclos[ing] to borrowers that they had the right to choose another insurer but that it did not believe that other insurers were available;  (2) includ[ing] the VSI premium in the finance charge; (3) not impos[ing] the VSI charge upon its borrowers;  or (3) simply not requir[ing] the insurance."

{¶ 19} Finally, we likewise find that there is no competent, credible evidence in the record to support any conclusion that North Shore clearly and conspicuously disclosed the cost of the VSI premium.   The only area on the installment contract that addresses single-interest insurance is marked "N/A."[6] Similarly, the sales order executed in connection with the installment contract lists "VSI" but fails to indicate any corresponding cost;  instead, the area is left blank.[7]   And while the second page of the installment contract lists "Amount Paid to Insurance Companies," followed by the $35 charge, we find this disclosure for purposes of conveying the cost of VSI insurance premium is insufficient, especially since the only area on the contract that specifically mentions the insurance states that it is not applicable.   We fail to see how any reasonable person would know that they were paying for VSI insurance, let alone that the cost of the premium was $35.

{¶ 20} Accordingly, having found that North Shore failed to comply with the TILA disclosure requirements, we now turn to the issue of whether the Usury Class is entitled to any remedy under RISA.

B.   *Willful Violation*

{¶ 21} To recover damages under RISA, the buyer must prove either of the following:  (1) that the seller willfully overcharged the buyer or (2) that the seller has been notified in writing of the overcharge and has failed within ten days of such notification to return the overcharge.   R.C. 1317.08;  see also *Sonn v. Taylor* (Sept. 28, 1993), 4th Dist. No. 1527, 1993 WL 382248.

---

5.   Carl Wangler, former president of North Shore (1994–2006), testified that the availability of VSI insurance in the open market has never previously arisen, which directly contradicts the assertion that North Shore specifically tailored its contract to convey that VSI was not available elsewhere.

6.   The trial court made no finding that the cost of the VSI premium was clearly disclosed.   It found, however, that North Shore's disclosure did not violate the TILA, giving rise to a RISA claim.

7.   By North Shore's own admission, the sales order does not clearly show that there is a $35 charge for VSI insurance.

{¶ 22} Block argues that the trial court misapplied the law in finding that North Shore did not willfully overcharge the Usury Class; he contends that the court improperly focused on whether North Shore willfully *violated* RISA, as opposed to whether it willfully imposed the $35 premium in its retail installment contracts. We agree.

{¶ 23} In the context of RISA cases, willful has been defined as "intentional or purposeful." *Hook v. Baker* (S.D.Ohio 2004), 352 F.Supp.2d 839, 844, citing *Kreitzer v. Thrifty Foods* (Aug. 5, 1985), 2d Dist. No. 8970. In order to prove a willful overcharge, the buyer need not show that the seller knew that the act violated the law; the buyer need only show that the seller intended to impose the charge that violates the act. *Sonn,* supra. Additionally, courts have found an overcharge to be willful per se when it is included in the preprinted contract form. *Hook* at 846, citing *Glouster Comm. Bank v. Winchell* (1995), 103 Ohio App.3d 256, 263–264, 659 N.E.2d 330.

{¶ 24} Here, the proper inquiry in this case is whether North Shore intended to charge the $35 premium under the amount financed. (Again, having already found that the $35 premium should have been treated as a finance charge, the imposition of this fee gives rise to the overcharge under R.C. 1317.061.) Based on the evidence at trial, we find that the evidence overwhelmingly demonstrates that it did. Indeed, the testimony at trial was uncontradicted and revealed that North Shore intended to impose this premium upon each of the class members.[8]

{¶ 25} Moreover, we find that the trial court's reliance on North Shore's failure to clearly disclose the charge as a basis for it to escape liability under R.C. 1317.08 is flawed. Here, because North Shore did not list the premium under the contract addressing single-interest insurance, the court reasoned that it "was not included in any preprinted language or clause," thereby finding no willfulness. But given that the evidence revealed that North Shore intended to impose this fee and did so on hundreds of contracts in the same manner, i.e., preprinted via a computer program on all class members' contracts, we find that the imposition of the charge is per se willful. See *Hook,* 352 F.Supp.2d 839 (recognizing that defendant's admission to using the form, which listed the overcharge on a preprinted form, was conclusive evidence that inclusion of the fee was intentional and purposeful).

{¶ 26} Having found that North Shore's overcharge was willful, we need not reach Block's argument regarding his alleged compliance with notice.

{¶ 27} In summary, because North Shore failed to comply with the TILA disclosure requirements, we find that the $35 VSI charge constitutes a finance

---

8. Wangler expressly stated at trial that the imposition of the fee was not an accident.

charge that was willfully imposed. Block's single assignment of error is sustained, and the judgment of the trial court is reversed.

{¶ 28} The judgment is reversed and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

GALLAGHER, A.J., and JONES, J., concur.